UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

NULPH INDUSTRIES, INC., and Idaho corporation, d/b/a THUNDERBIRD MANUFACTURING,

Plaintiff,

v.

DOUBLE M RANCH AND AGRICULTURE SUPPLY, INC., an Idaho corporation, d/b/a DOUBLE M AG AND IRRIGATION,

Defendant.

Case No. 4:24-cv-00061-AKB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Plaintiff Nulph Industries, Inc.'s Motion to Compel (Dkt. 14). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants Plaintiffs' motion.

## I. BACKGROUND

Plaintiff Nulph Industries, Inc. d/b/a Thunderbird Manufacturing ("Thunderbird Manufacturing") is an Idaho corporation with its principal place of business in American Falls, Idaho (Dkt. 1 at ¶ 5). Thunderbird Manufacturing claims to manufacture, market, and supply agricultural irrigation equipment, specifically the Thunderbird wheel line and Thunderbird wheel

line components and replacement parts (*id.* at ¶ 2). Defendant Double M Ranch and Agriculture Supply, Inc. ("Double M") also sells irrigation equipment and parts (*id.* ¶¶ 3, 6).

Thunderbird Manufacturing alleges the following facts: On September 22, 2023, it purchased the assets, including the trade names, of Thunderbird Irrigation of Idaho, Inc. and Knudsen Irrigation, Inc. ("Knudsen") (*id.* at ¶ 10). In 2006, Knudsen acquired the "Thunderbird" and "Thunderbird Irrigation" trade names when it purchased the trade names from Rain Dance Irrigation, Inc ("Rain Dance") (*id.* at ¶ 12). Rain Dance manufactured and marketed wheel lines, wheel line components, and replacement parts under the trade names "Thunderbird" and "Thunderbird Manufacturing" since at least 1983 (*id.* at ¶ 13). Since Thunderbird Manufacturing acquired the names from Rain Dance, it has consistently manufactured and marketed wheel lines and wheel line parts under the Thunderbird trade names (*id.* at ¶¶ 11-14). In February 2021, Double M began using Thunderbird trade names to market wheel line components and parts that were not manufactured by Thunderbird Manufacturing and that were of inferior quality as to Thunderbird Manufacturing's products (*id.* at ¶¶ 16-17, 22-23). As a result, Double M has created market confusion and tarnished Thunderbird Manufacturing's brand (*id.* at ¶ 20-25).

On February 1, 2024, Thunderbird Manufacturing filed its complaint in this Court (Dkt. 1). Thunderbird Manufacturing asserts six claims, which allege Double M committed trademark infringement under the Lanham Act; committed common law trademark infringement; engaged in unfair competition; violated Idaho Code § 48-603 by engaging in unfair methods and practices; was unjustly enriched; and committed tortious interference with prospective economic advantage (*id.* at ¶ 26-64). Double M filed a timely answer, (Dkt. 6), and the Court issued a scheduling order to govern the deadlines for this case (Dkt. 13). The Court advised the parties to meet and confer

on any discovery dispute and to contact the Court to engage in informal mediation before engaging in motions practice on any dispute (*id.* at 3-4).

On or around August 15, 2024, Thunderbird Manufacturing served its interrogatories and requests for production to Double M (Dkt. 14-2 at 1). On September 26, Double M responded to those requests (*id.* at 2). On October 30, Thunderbird Manufacturing sent a letter to counsel for Double M regarding alleged deficiencies in Double M's answers (*id.*). The letter summarized Thunderbird Manufacturing's concerns that a range of Double M's responses were insufficient (*id.* at 52-56). Thunderbird Manufacturing characterized Double M's objections as "unduly burdensome, overbroad, and unlikely to lead to admissible evidence" (*id.* at 52). On October 31, the parties spoke over the phone about the status of the discovery responses (*id.*). Counsel for Thunderbird Manufacturing represents he sent two additional emails in early and mid-January 2025, requesting that Double M address the alleged deficiencies.

On February 10, Thunderbird Manufacturing filed the instant motion to compel regarding Double M's alleged deficiencies in their responses (Dkt. 14). Thunderbird Manufacturing specifically requested complete responses to Interrogatories Nos. 1-3, 5-6, 9-10, 12, 14-15, and 16 which Thunderbird Manufacturing contends "relate to discerning the full scope of Double M's infringing/unfair competition activities and the damages arising therefrom" (Dkt. 14-1 at 1-2). Neither party sought informal mediation of the pending dispute, as required by the Court's scheduling order. Thunderbird Manufacturing also did not clearly state whether the parties had recently met in person or via phone to resolve any of the multiple interrogatories (*id.*). Accordingly, the Court ordered the parties to meet and confer and then provide to the court a joint statement on

the pending discovery disputes (Dkt. 15). The Parties provided the statement on March 13 (Dkt. 18). Of the eleven disputes, the parties resolved none (*id.*).

## II. LEGAL STANDARD

Parties may obtain discovery as to any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party seeking discovery may move for an order compelling production if an opposing party has failed to answer an interrogatory, participate in a deposition, or produce requested documents. *See* Fed. R. Civ. P. 37(a)(3). The party seeking to compel discovery bears the initial burden of showing the request is relevant and proportional. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). If the moving party establishes the information sought is discoverable, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

## III. ANALYSIS

In its supporting memorandum, Thunderbird Manufacturing initially identifies eleven interrogatories and twenty requests for production at issue (Dkt. 14-1 at 1-2). Later, Thunderbird Manufacturing disputes only twenty-one interrogatories and requests for production (*id.* at 5-19). In the parties' joint statement, however, the parties provide arguments for only eleven different

interrogatories or requests for production (Dkt. 18). Because the Court directed the parties to address each and every outstanding issue, the parties' silence on those unaddressed issues suggests the parties have resolved those disagreements. To the extent unbriefed issues are in fact unresolved, the Court directs the parties to follow and apply the Court's analysis herein to related issues.

Accordingly, the Court addresses the eleven interrogatories and requests for production that the parties address in their joint statement. The disputes appear to focus on two key issues: the timeframe of discovery and ambiguity or vagueness as to Thunderbird Manufacturing's requests (*id.*). Interrogatory No. 3 involves an additional issue: Thunderbird Manufacturing's request for Double M to identify "each and every person with discoverable information regarding the issues raised in this litigation," among other conditions (*id.*). The Court addresses these issues in turn.

**A. Defendant's Objection to Timeframe for Discoverable Information (Interrogatories Nos. 6, 9, and 10 and Requests for Production Nos. 8, 12, 14, 18, 19, 23, and 25)**

Double M has declined to answer interrogatories or requests for production because, as Double M contends, it is not liable for conduct that it engaged in before Thunderbird Manufacturing filed the trademark applications, and because information predating the applications is not relevant (Dkt. 14 Ex. A at 8-9; Dkt. 18 at 10). Double M later changed its explanation; it now claims that it need not provide documents that predate Thunderbird Manufacturing's acquisition of the mark and suggests this information is irrelevant (Dkt. 18 at 12, 16, 18).

Here, Thunderbird Manufacturing asserts claims under § 43 of the Lanham Act (15 U.S.C. § 1125(a)) for unregistered trademark infringement, common law trademark infringement, unfair competition, unfair methods and practices (Idaho Code § 48-603), unjust enrichment, and tortious interference with a prospective economic advantage (Dkt. 1). Under the Lanham Act, a plaintiff

may seek to recover for infringement of either a registered trademark under 15 U.S.C. § 1114 or an unregistered trademark under 15 U.S.C. § 1125. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970-71 (9th Cir. 2007). To prove unregistered trademark infringement, a claimant must show (1) the existence of a valid and protectable trademark and (2) the likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Double M provides no authority to support its contention that the date a plaintiff filed a trademark registration application precludes the discovery of evidence relevant to these elements. The Court likewise finds no authority to suggest this argument has merit.

Double M's argument that it need not provide discovery concerning documents and events before Thunderbird Manufacturing's alleged acquisition of the Thunderbird marks is also unpersuasive. First, to the extent Double M suggests that Thunderbird Manufacturing cannot recover for infringement predating its formal acquisition of the marks from Rain Dance, Double M is mistaken. Assignees to a trademark can recover for past infringement where they have contractually received the right to do so or have received all the assets of the assignor to the mark. *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 957 (D. Nev. 2010) (citing *H & J Foods, Inc. v. Reeder*, 477 F.2d 1053, 1056 (9th Cir. 1973)). Thunderbird Manufacturing alleges to have acquired all the assets of the mark's previous owner, Rain Dance (Dkt. 1 at ¶ 10); therefore, Thunderbird Manufacturing may raise claims that relate to alleged infringement when Rain Dance owned the marks.

Second, Double M raises the defenses of adverse possession, abandonment, and pertinent misconduct as to Rain Dance (Dkt. 6 at 3-4). Evidence from before September 2023—predating Thunderbird Manufacturing's alleged acquisition of the marks—is relevant to Double M's alleged

use of the marks or Rain Dance's alleged abandonment and relates directly to Double M's defenses. Accordingly, the Court finds that Double M must respond to Thunderbird Manufacturing's requests for information predating the September 2023 acquisition because discovery relevant to claims and defenses precedes that timeframe.

**B. Double M's Objections to Interrogatories as Vague and Ambiguous**

Double M objects to several interrogatories and requests for production by claiming that the requests are vague and ambiguous (Dkt. 18 at 6-18, 20-24). Double M specifically objects to the phrase "Thunderbird Marks" as vague and ambiguous (*id.* at 6-10, 16-18, 20-24), and objects to most of the pertinent interrogatories and requests for production by claiming that one or more additional phrases is vague and ambiguous (*id.* at 6, 10-14, 16-20, 22-24). During discovery, parties may wish to qualify their answers regarding potentially impertinent information, but parties are still obligated to provide answers based on their understanding of the question unless the request is "so ambiguous that the responding party cannot, in good faith, frame an intelligent reply." *McGee v. Poverello House*, No. 118CV000768LJOSAB, 2019 WL 2725342 at *5 (E.D. Cal. July 1, 2019) (quoting *U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 685 (E.D. Cal. 2006)). "Parties should 'admit to the fullest extent possible and explain in detail why other portions of a request may not be admitted.'" *Englund*, 235 F.R.D. at 685 (quoting *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994)).

**1. Thunderbird Manufacturing's use of the phrase "Thunderbird Marks" (Interrogatories Nos. 6 and 10 and Requests for Production Nos. 8, 12, 18, 19, 23, and 25)**

Double M objects to all but one of the disputed requests because it finds the phrase "Thunderbird Marks" to be vague and ambiguous (Dkt. 18 at 6-10, 16-18, 20-24). In its discovery

requests, Thunderbird Manufacturing defines several terms and phrases, including the phrase "Thunderbird Marks" (Dkt. 14 Ex. A at 5, Ex. B at 4-8; Dkt. 18 at 6-9). It defines "Thunderbird Marks" as the four trademarks that Thunderbird Manufacturing has applied to register and the term "Thunderbird" when used in the sale and marketing of irrigation parts and equipment (Dkt. 14 Ex. A at 5, Ex. B at 4-8; Dkt. 18 at 6-9). Double M asserts these terms are vague and ambiguous. Double M describes each of the trademarks as put forth in Thunderbird Manufacturing's applications and concludes the last portion of the definition is vague and ambiguous. Double M contends the definition "appears to assert that any use of the word 'Thunderbird' at any time, including times when [Thunderbird Manufacturing] did not have any applications or registrations for trademark related to the term Thunderbird," constitutes a "Thunderbird Mark" (Dkt. 14 Ex. B at 4-8; Dkt. 18 at 6-9).

"[I]f the responding party finds a term vague, and the propounding party proposes a definition, although the responding party may disagree with the definition, that does not mean the term as defined for purposes of the discovery request is vague and ambiguous." *McGee v. Poverello House*, 2019 WL 2725342 at *5. Here, Thunderbird Manufacturing asserts claims for, *inter alia*, unregistered trademark infringement (Dkt. 1 at ¶¶ 27, 31), including claims that Double M used the "Thunderbird" before Thunderbird Manufacturing applied for the registration of these marks (*id.*). Despite Double M's objections to the phrase "Thunderbird Marks," Double M appears to fully and accurately describe what the phrase is intended to mean. Double M's own analysis suggests the phrase is not so ambiguous that it could not, in good faith, frame an intelligent response. Rather, Double M disagrees that the mark belonged to Thunderbird Manufacturing at that time (Dkt. 14 Ex. B at 4-8; Dkt. 18 at 6-9). This disagreement does not make the definition

vague or ambiguous. Accordingly, the Court grants Thunderbird Manufacturing's motion to compel with regard to the "Thunderbird Marks" term because the term is not vague or ambiguous.

**2. Thunderbird Manufacturing's use of the term "all parts" (Interrogatories Nos. 6, 9, and 10)**

Thunderbird Manufacturing requests a list of all parts that Double M sold, marketed, promoted, or identified either as intended for use on one of Thunderbird Manufacturing's wheel lines or using its claimed marks (Dkt. 14 Ex. A at 7; Dkt. 18 at 10-11, 15). Double M argues the phrase "all parts" is vague and ambiguous and is unsure which parts it has sold meet that definition, though Double M states it will comply with this request as far as identifying the completed assemblies that Thunderbird Manufacturing identifies in its complaint and identifying individual parts that are unique to and could only be used on a Thunderbird Manufacturing wheel line (Dkt. 18 at 12-15). Thunderbird Manufacturing insists that Defendant must provide a list of all completed assemblies and their component parts as well as the individual parts that Double M identified, sold, marketed, or promoted as Thunderbird parts regardless of whether the parts were unique to or could only be used on a Thunderbird Manufacturing wheel line (*id.* at 11-12).

Here, Thunderbird Manufacturing requests Double M to provide a list of all component parts, including parts that may not have been sold separately from the complete assemblies (*id.* at 11-12). Double M responds that it will only provide the unique parts/assemblies that were individually marketed as Thunderbird parts, and if those parts were also unique to Thunderbird Manufacturing equipment (*id.* at 12-15). Discovery is limited to matters that are relevant and proportional to the claims and defenses of the litigation. *See* Fed. R. Civ. P. 26(b)(1). Matters are relevant when they bear on, or reasonably could lead to other matters that bear on, any issue that arises or may arise during litigation. *Oppenheimer Fund*, 437 U.S. at 351. Thunderbird

Manufacturing has not shown, or even directly argued, that the unmarked component parts of a completed assembly that are not sold individually are relevant to any claims or defenses. Accordingly, the Court declines to compel discovery on component parts of pertinent completed assemblies that are not themselves sold individually.

A different analysis applies to parts that were identified, sold, marketed, or promoted as Thunderbird parts, even if the parts themselves are not unique to Thunderbird equipment. Thunderbird Manufacturing asserts claims for, *inter alia*, unfair competition and unregistered trademark infringement (Dkt. 1 ¶¶ 27, 29, 31, 41). To succeed on these claims, Thunderbird Manufacturing must show that Double M commercially used any word, term, name, symbol, device or false factual statement that either is likely to cause customer confusion or misrepresents the nature of a party's goods. 15 U.S.C. § 1125(a)(1). Matters that "bear on" issues that arise during litigation are relevant; assuming the requests are proportional, the matters are discoverable. *Oppenheimer Fund*, 437 U.S. at 351. Evidence regarding Double M identifying and marketing non-unique parts as Thunderbird parts bears on claims that Defendant commercially used a word or false statement that could cause consumer confusion or misrepresent the nature of the parts. Therefore, information regarding Double M identifying, selling, marketing, or promoting Thunderbird parts is relevant.

Double M also contends the interrogatories are unduly broad, though it provides no legal or factual support for this assertion (Dkt. 18 at 11, 15).[1] Generalized, boilerplate objections are

---

[1] Defendant repeats its "unduly broad" objection against nearly all of Plaintiff's requests in its responses to the interrogatories (Dkt 14 Ex. B at 14, 10, 17-19, 25-33; Dkt. 18 at 10, 15, 17, 19-24) and in the joint statement (Dkt 18 at 10, 12). In all instances, Defendant does no more than to assert that a request is overbroad (Dkt. 14 Ex. B at 14, 10, 17-19, 25-33; Dkt. 18 at 10, 12, 15, 17, 19-24).

insufficient to oppose a proper request for discovery. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). As Double M asserts the interrogatories are overbroad without any additional argument, the Court declines to consider the objection further.

Accordingly, the Court grants Thunderbird Manufacturing's motion to compel to the extent Double M must disclose the parts that it has identified, sold, marketed, or promoted as in some way affiliated with or compatible with Thunderbird Manufacturing or any of its claimed marks. The Court does not require Double M to disclose parts of completed assemblies that are unmarked and not sold individually.

**3. Thunderbird Manufacturing's use of the terms "parts intended for use," "Thunderbird," "Thunderbird Manufacturing wheel line," "acquisition," "otherwise intended to be compatible," "every individual and/or entity," "use," "goods," "purchase orders," "invoices," and "suppliers" (Interrogatories Nos. 6, 9, and 10 and Requests for Production Nos. 8, 12, 18, 19, 23, and 25)**

Double M objects to the majority of Thunderbird Manufacturing's requests because it claims that for each request, there is at least one phrase that is vague and ambiguous (Dkt. 18 at 5-6, 10-11, 15-24) (discussing "parts intended for use," "Thunderbird," "Thunderbird Manufacturing wheel line," "acquisition," "otherwise intended to be compatible," "every individual and/or entity," "use," "goods," "purchase orders," "invoices," and "suppliers"). Double M does not elaborate on how any of these phrases are vague or ambiguous, or how any phrase could be construed to arrive at an interpretation other than the plain meaning of the words (*id.*). Generalized, boilerplate objections are inadequate and have the same effect as not objecting at all. *Walker*, 186

F.R.D. at 587. When a term has a plain meaning, a court will not create ambiguity by reading in hyper-technical definitions. *Pizzuto v. Tewalt*, No. 1:21-CV-00359-BLW, 2024 WL 1329928, at *7 (D. Idaho Mar. 28, 2024), *aff'd*, 131 F.4th 1070 (9th Cir. 2025), and *aff'd*, 136 F.4th 855 (9th Cir. 2025). Here, Double M objects using boilerplate assertions that the phrases are vague and ambiguous (Dkt. 18 at 5-6, 10-11, 15-24). These phrases and requests have a clear and plain meaning, and this Court will not fabricate ambiguity where there is none. Accordingly, the Court grants Thunderbird Manufacturing's motion to compel as it pertains to these objections.

**C. Plaintiff's Request for "Each and Every Person with Discoverable Information" (Interrogatory No. 3)**

In Interrogatory No. 3, Thunderbird Manufacturing requests the identity of all persons that have discoverable information pertinent to the issues raised in litigation, a summary of the information, and whether Double M intends to call them as witnesses (*id.* at 1). Double M responds by listing itself, three of Thunderbird Manufacturing's officers, and then two of Double M's officers (Dkt 14 Ex. B at 11-12). Double M provides one sentence describing each entity and the information that entity possesses (*id.*). Thunderbird Manufacturing argues that these six entities are insufficient because this interrogatory seeks the identities of individuals involved in the manufacture and sale of pertinent products (Dkt. 18 at 2-3). Double M responds that the manufacture and sale of infringing products is not pertinent to any issues raised in litigation (*id.* at 4).

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires, without awaiting a discovery request, the disclosure of the identity and contact information of each individual likely to have discoverable information and a statement of what that information is. Thunderbird Manufacturing is asserting claims for trademark infringement and unfair competition (Dkt. 1 at

¶¶ 26-52), including allegations that Double M used the trademark in the manufacture and sale of Defendant's products (*id.* at ¶¶ 16-25, 27, 30). Therefore, Thunderbird Manufacturing's request for Double M to identify people with this information, including information regarding the sale and manufacture of Double M's products, relates to the issues raised in litigation. Interrogatory No. 3 relates largely to information Double M must disclose under Rule 26(a)(1)(A). It is unclear under what theory Double M opposes the disclosure of information covered by Rule 26(a)(1)(A). Accordingly, the Court grants Thunderbird Manufacturing's request for this information because it is both relevant and proportional.

## IV. ORDER

**IT IS ORDERED that:**

1. Plaintiff Motion to Compel (Dkt. 14) is **GRANTED**. Within **twenty-eight (28) days** after the issuance of this Order, Defendant Double M shall answer discovery consistent with the Court's analysis as herein stated.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: August 27, 2025

Amanda K. Brailsford
U.S. District Court Judge